**In re PENN PACKING COMPANY, Debtor.**

**Leo F. DOYLE, Trustee, Plaintiff,**

**v.**

**Martin LIPOFF, Lawrence Lipoff, Steven Lipoff, Butler Foods, Inc., David Fingerman and Isabelle Fingerman, individually, jointly and as husband and wife, Ernest Milou and Pearl Milou, individually, jointly and as husband and wife, Defendants.**

**Bankruptcy No. 83–04358G.
Adv. No. 84–0584G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 29, 1984.

Michael A. Bloom, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiff/trustee, Leo F. Doyle.

Tom P. Monteverde, William M. Shields, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for the defendants, Martin Lipoff, Lawrence Lipoff, Steven Lipoff, and Butler Foods, Inc.

Robert A. Prentice, Joseph S.U. Bodoff, Pincus, Verlin, Hahn, Reich & Goldstein, P.C., Philadelphia, Pa., for defendants, David Fingerman and Isabelle Fingerman, Individually and jointly and husband and wife, and Ernest Milou and Pearl Milou, individually, jointly and his wife.

Nicholas J. LePore, III, Philadelphia, Pa., for debtor, Penn Packing Co.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

Before us is the trustee's complaint for the avoidance of certain alleged fraudulent transfers and the subordination of certain debts. The issue presently confronting us is whether we should grant a motion filed by several of the defendants for an order dismissing three of the trustee's four causes of action. For the reasons stated herein we will deny the motion.

■ To the extent pertinent to the motion before us the facts of this case are as follows:[1] Prior to the cessation of its operations due to financial difficulties, the debtor was in the meat packing business. In the beginning of 1980 the debtor's corporate stock was owned by Martin Lipoff ("Lipoff"), Pearl Milou and Isabelle Fingerman, who are two of Lipoff's sisters, and Ernest Milou and David Fingerman who are Lipoff's brothers-in-law. At that time Ernest Milou, David Fingerman and Lipoff were also officers and directors of the debtor. Thereafter, on February 1, 1980, the

debtor signed four stock redemption agreements ("Redemption Agreement(s)") by which it agreed to repurchase 6,500 shares of the debtor's corporate stock held by the Milous and the Fingermans for $3,723,-000.00. The stock was redeemed that day, in exchange for which Fingerman and Milou received a portion of the purchase price in cash with the balance evidenced by a note secured by a mortgage on the debtor's business site on East Butler Street. At about the time of the redemption David Fingerman and Ernest Milou resigned as officers of the debtor and in lieu thereof Lawrence and Steven Lipoff, who are two of Lipoff's sons, were appointed to the vacancies.

The debtor ceased conducting business on June 18, 1981. Between that date and October 12, 1981, the debtor liquidated its assets and satisfied the claims of virtually all of its creditors. The Milous, the Fingermans and the debtor executed a modification of the Redemption Agreement ("the Modified Agreement") on March 29, 1982, which called for the debtor's immediate payment of more than $1,200,000.00 to the Milous and the Fingermans. The last transfer which is ostensibly avoidable as far as regards the motion at bench was apparently this $1,200,000.00 payment. In addition, the Modified Agreement obligated the debtor to satisfy the note arising under the stock redemption in October of 1982 and thus reduced the time for repayment from more than six years to less than eight months. Shortly after the signing of the Modified Agreement, the debtor defaulted thereunder and the Milous and the Fingermans foreclosed on the East Butler Street property. The property was sold at sheriff's sale and the Milous and the Fingermans purchased it for a nominal value.

The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy

---

1. In adjudicating a motion to dismiss a complaint for failure to state a cause of action upon which relief can be granted, we must view the facts in the manner most favorable to the plaintiff. We can grant such a motion only if it appears certain that the plaintiff is entitled to no relief under any statement of facts which

could be proved in support of the claim. *Hishon v. King & Spalding,* —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A *Moore's Federal Practice* 12.08 (2d ed. 1982).

Code ("the Code") on November 7, 1983, although the case has since been converted to a chapter 7 proceeding. The trustee filed the complaint at issue on May 14, 1984.

All the defendants in the action before us, excluding Butler Foods, Inc. ("Butler"), filed the motion for dismissal of three of the trustee's four causes of action. In the first cause of action the trustee alleges that the transfers to the defendants under the Redemption Agreement and the Modification Agreement are voidable under Pennsylvania's Uniform Fraudulent Conveyance Act, Pa.Stat.Ann. tit. 39, §§ 351 to 363 (Purdon 1954). The movants urge dismissal of this count on the basis of the statute of limitations which they assert provides a two-year bar date. As stated above, the last transfer which is possibly avoidable as far as is pertinent to the motion at bench was effected on March 29, 1982, although the trustee's complaint was not filed until May 14, 1984.

■ Before progressing further with our discussion of the limitation of actions on suits brought under Pennsylvania's Uni-

form Fraudulent Conveyance Act, we note that there is no express statutory restriction on the time for commencing such an action. The case law provides that the statute of limitations for common law fraud typically applies to fraudulent conveyance actions. *Bickell v. Stein*, 291 Pa. Super. 145, 435 A.2d 610 (1981). Prior to June 27, 1978, which was the effective date of Pennsylvania's revised statute of limitation, actions for fraud had to be instituted within six years of the alleged fraudulent conduct. *Fickinger v. C.I. Planning Corp.*, 556 F.Supp. 434 (E.D.Pa.1982). The amendment to the statute of limitations failed to provide an express bar date for commencing an action for common law fraud and in subsequent litigation the question arose whether the two-year bar date of 42 Pa.Cons.Stat. § 5524(3)[2] applies or the six-year bar date of 42 Pa.Cons.Stat. § 5527(6).[3] The parties have presented us with only one Pennsylvania state appellate court case addressing the subject. *Bickell v. Stein*, 291 Pa.Super. 145, 435 A.2d 610 (1981). The court in *Bickell* merely assumed without discussion that the two-year bar date of § 5524(3) applied. Prior to

**2.** § 5524. Two year limitation

The following actions and proceedings must be commenced within two years:

(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

(3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.

(4) An action for waste or trespass of real property.

(5) An action upon a statute for a civil penalty or forfeiture, where the action is given to a government unit.

(6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon an execution or otherwise in his possession.

42 Pa.Cons.Stat. § 5524.

**3.** § 5527. Six year limitation

The following actions and proceedings must be commenced within six years:

(1) An action upon a judgment or decree of any court of the United States or of any state.

(2) An action upon a contract, obligation or liability founded upon a bond, note or other instrument in writing, except an action subject to another limitation specified in this subchapter. Where an instrument is payable upon demand, the time within which an action or proceeding on it must be commenced shall be computed from the later of either demand or any payment of principal or of interest on the instrument.

(3) An action upon any official bond.

(4) A proceeding in inverse condemnation, if property has been injured but no part thereof has been taken, or if the condemnor has made payment in accordance with section 407(a) or (b) (relating to possession and payment of compensation) of the act of June 22, 1964 (Sp.Sess., P.L. 84, No. 6), known as the "Eminent Domain Code."

(5) An action to set aside a judicial sale of property.

(6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).

42 Pa.Cons.Stat. § 5527.

*Bickell* a United States District Court in this district held, without significant discussion, that the limitation period for fraud remains six years although a review of the authority upon which the court relied reveals that that authority may be inapposite. *Culbreth v. Simone,* 511 F.Supp. 906 (E.D. Pa.1981). Following the decision in *Bickell* another federal court in this district held after noteworthy analysis that the two-year bar date applied. *Fickinger,* 556 F.Supp. 434. The court in *Fickinger* quoted and relied heavily on the explanatory remarks on § 5524 from the Pennsylvania Bar Association's Special Committee on the Judicial Code which are as follows:

> § 5524. The period of limitations in wrongful death actions is increased from one to two years to conform to the general two-year statute on personal injuries.
>
> \*   \*   \*   \*   \*   \*
>
> Also in the same section the periods applicable to conversion of or injury to personal property and waste or trespass to real property are reduced from six to two years to conform to the modern principal that claims based on conduct, and hence heavily relying on unwritten evidence, should have relatively short statutes of limitations, so as to bring them to trial (after allowance for pre-trial delays) before memories have faded. The two-year statute is made the general statute for tort claims (libel, slander and invasion of privacy with one-year periods of limitation constitute the principal exceptions).
>
> \*   \*   \*   \*   \*   \*

Pennsylvania Bar Association Judicial Code Explanation, *reprinted above* 42 Pa.Cons. Stat.Ann. § 101, p. XI, at pp. XVI to XVII (Purdon 1981). In a recent decision on Pennsylvania's statute of limitations we likewise quoted the above material and held that § 5524 is the general residuary provision for tort claims. *Bobroff v. Continental Bank (In Re Bobroff),* 37 B.R. 847 (Bankr.E.D.Pa.1984), *rev'd on other grounds,* 43 B.R. 746 (E.D.Pa.1984). Since an action under Pennsylvania's Fraudulent Conveyance Act is essentially a tort we hold that such an action must generally be brought within the two-year bar of § 5524(3).

Notwithstanding § 5524(3), the trustee asserts that § 5527(6) applies when a fraudulent conveyance action is brought against stockholders or directors and in support of his position he cites a decision from this court. *Zimmerman v. Rosenthal (In Re Pasco Tobacco Co., Inc.),* 21 B.R. 958 (Bankr.E.D.Pa.1982). In that case we noted that prior to the 1978 effective date of Pennsylvania's new statute of limitations, state law expressed a six-year bar to the commencement of actions against shareholders and directors of corporations. Pa.Stat.Ann.tit. 12, § 41[4] (Purdon 1953). We analyzed the route of disposition of § 41 and held the essence of that provision had been codified in 42 Pa.Cons.Stat.Ann. § 5527(6) (Purdon 1981). Thus, the trustee relies on *Pasco* in asserting that the action at bench is subject to the six year statute of limitations of § 5527(6) rather than the two year limitation of § 5524(3).

The movants contend that the trustee's position is flawed since he has failed to consider the effect of Pa.Stat.Ann. tit. 15, § 1707 (Purdon 1967) of Pennsylvania's Business Corporation Law which states in part that:

> § 1707. Liability for unlawful dividends and distributions
>
> A.   \*   \*   \*

---

**4.** § 41. Limitation of suits against stockholders and directors

It is hereby declared to be the true intent and meaning of the statutes of limitation, that no suit, at law or in equity, shall be brought or maintained against any stockholder or director in any corporation or association, to charge him with any claim for materials or moneys for which said corporation or association could be sued, or with any neglect of duty as such stockholder or director, except within six years after the delivery of the materials or merchandise, or the lending to or deposit of money with said corporation or association, or the commission of such act of negligence by such stockholder or director. Pa.Stat.Ann. tit. 12, § 41 (Purdon 1954), Pub.L. No. 58, § 1, March 28, 1967 (repealed).

B. If any dividend shall be paid or if any withdrawal or distribution of any part of the corporate assets shall be made except as provided in this act, each shareholder shall be liable to the corporation in an amount equal to the amount of the unlawful dividend or unlawful withdrawal or distribution of assets to him if, but only if, he is sued therefor within two years from the date of his receipt thereof.

\*　　\*　　\*　　\*　　\*　　\*

The defendants have illuminated the anomolous situation in which state law apparently provides two conflicting statutes of limitation for suits brought against shareholders and directors. This paradox is not of recent creation. Although § 5527(6) was only passed in 1976, it traces its lineage, in part, to Pa.Stat.Ann. tit. 12, § 41 which was passed in 1867, while the ancestry of § 1707 of the Business Corporation Law can be traced to 1933 or earlier. Pub.L. No. 364, art. VII, § 707, May 5, 1933. There curiously appear to be no reported cases on this conflict nor any reported cases which discuss the applicability of the bar provision in § 1707, yet several cases have discussed § 41.

■ In resolving this conflict we conclude that the bar of § 1707 applies only to causes of action which would not arise but for specific prohibitions contained in the Pennsylvania Business Corporation Law. As applied to shareholders and directors, the time bar of § 5527(6) governs the filing of suit on causes of action which arise other than under the Pennsylvania Business Corporation Law. Since the first cause of action in the controversy at bench is against stockholders and directors of a corporation but is predicated on the Pennsylvania Fraudulent Conveyance Law rather than the Business Corporation Law, we hold that the six year limitation of § 5527

applies. This conclusion comports with the overall statutory scheme of the current provisions on the statute of limitation since the shareholders and directors of the closely held debtor corporation,—who are related through blood or marriage,—are fiduciaries and since the limitation provisions evince a legislative intent to allow a longer period of time in which to file actions against certain fiduciaries. *See, e.g.,* 42 Pa.Cons.Stat.Ann. § 5531(1) (Purdon 1981) (there is no time bar for commencing proceedings against an attorney by a client to enforce any implied or resulting trust as to real property.)

■ Having resolved the defendants' first basis for dismissal of the trustee's first cause of action we must now address that part of the movants' motion whereby they seek dismissal of the trustee's request for damages in his prayer for relief. The movants assert that Pennsylvania's Fraudulent Conveyance Act does not provide for damages but only for the setting aside of the conveyance or the attachment of the property conveyed. Pa.Stat.Ann. tit. 39, § 359 (Purdon 1954). The parties have not presented us with any appellate cases from the Pennsylvania state courts, but the legislature has provided that the act shall be interpreted "to effectuate its general purposes to make uniform the law of those states which [have] enact[ed] it." Pa.Stat. Ann. tit. 39, § 362 (Purdon 1954). Consequently, case law from jurisdictions that have adopted this uniform act are persuasive authority. *United States v. Gleneagles Investment Co., Inc.,* 565 F.Supp. 556, 573 (M.D.Pa.1983). The majority of jurisdictions which have faced the question have ruled in favor of the allowability of damages. *See, e.g., Damazo v. Wahby,* 269 Md. 252, 305 A.2d 138 (1973). In light of the reasoning quoted below [5] from *Da-*

---

5.　While the Maryland law on this subject is not as unequivocal as one might hope, the logic of the authorities is unassailable. Obviously, if the subject of the fraudulent conveyance has been disposed of or cannot be reached, the person defrauded should be able to recover from the person to whom the trans-

fer was wrongfully made, and through whose hands it passed .... Moreover, it should be remembered that the Legislature, in enacting the Uniform Fraudulent Conveyance Act was enacting a statute declaratory of the common law and was not restricting the legal or equitable remedies already available to a creditor.

*mazo*, we hold that damages are allowable under Pennsylvania's Fraudulent Conveyance Act on a showing of the proper facts. Consequently, the movants have not proved their entitlement to dismissal of the trustee's request for damages and we will deny that aspect of their motion.

Since the movants are not named in the second cause of action, they have not pressed for dismissal of that count, and thus we will proceed to the third cause of action in which the trustee substantially realleges the matter expressed in the first cause of action although it additionally urges "equitable avoidance" of the transfers at issue and equitable subordination. Although the trustee has failed to advance any support for its theory of "equitable avoidance," it has presented sufficient authority on its claim for equitable subordination to withstand dismissal of the cause of action. *See, e.g.,* 11 U.S.C. § 510(c); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). We will deem the duplicity between the first and third causes of action mere surplusage and deny the defendants' motion for dismissal of the third cause of action.[6]

Under the fourth cause of action the defendants have moved for dismissal since they contend that the debtor has alleged only violations of Pennsylvania's Business Corporation Law which, as we held above, would be barred by a two-year statute of limitations. Although some of the trustee's averments fall only within the umbra of the Business Corporation Law, for the purposes of a motion to dismiss we cannot conclude that the facts averred will not support a cause of action under another body of law applicable in Pennsylvania which would render applicable the longer six year statute of limitations under § 5527(6). Consequently, we will not dismiss the fourth cause of action.

The Act simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment. The underlying objective of the uniform act is to enhance and not impair the remedies of the creditor.

Interestingly enough, the innovative impact of the Act in other jurisdictions where for the first time a creditor could file his bill of complaint without having reduced his claim to judgment, was not a novel idea in Maryland, where this had been the law since the passage of Ch. 380, § 2 of the Laws of 1835, Code (1957) Art. 16, § 39; Miller, Equity Procedure §§ 730–732, at 832–34 (1897). This provision was not repealed by the Uniform Act and subsisted until 1962 when it was supplanted by Maryland Rule X70, to the same effect.

We are simply not impressed by the Damazos' argument that the entry of an in personam judgment is not within the contemplation of the Uniform Fraudulent Conveyance Act, merely because § 9 offers the alternative of setting aside the conveyance or executing upon the property conveyed.

The better rule would seem to be that so long as the property remains in the possession of the fraudulent transferee, who does nothing to lessen its value, a judgment in personam will not be entered. But where the transferee allows or causes the property to depreciate in value or parts with the property without sufficient consideration or puts it beyond the reach of the court, equity will not allow itself to be frustrated but will adapt its relief to the exigencies of the case and will enter a money judgment if this will achieve an equitable result. The form of the relief should be so framed as to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance.

Particularly apposite here is an excerpt from McLaughlin, Application of the Uniform Fraudulent Conveyance Act, 46 Harv.L.Rev. 404, 443 (1933):

"On general equitable principles, have not the creditors of the grantor an equity in the property in the hands of the fraudulent grantee? And if he dissipates the property, cannot they hold him accountable? And if so, is the operation of such a principle precluded by section 9 of the Uniform Act which specifies the two usual remedies of creditors, or admitted under section 11 as a case not provided for in the Act? A possible construction is that the maxim expressio unius-exclusio alterius applies to section 9 [a construction which the Damazos earnestly espouse]. But a preferable construction is that the creditor's right to avoid, like an equity of rescission in a defrauded transferor, carries with it a remedy against the transferee on a theory of constructive trust...."

*Damazo*, 305 A.2d at 141–42 (some footnotes, quotes and citations omitted).

6. On the third cause of action the movants have also urged dismissal on the basis of the statute of limitations, which we resolved against the movants in discussing the first cause of action.

In summary, we will enter an order denying in full the defendants' motion for dismissal.